2.4636

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ACUITY, a mutual insurance company, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| KSA LIGHTING & CONTROLS, INC., JIM WILLIAMS, ASHLEY WILLIAMS, and FORCE PARTNERS, LLC, | ) ) ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes the Plaintiff, Acuity, a mutual insurance company ("Acuity"), by and through its attorneys Joseph P. Postel and Philip G. Brandt of Lindsay, Pickett & Postel, LLC, and for its Complaint for Declaratory Judgment against the Defendants KSA Lighting & Controls, Inc. ("KSA"), Jim Williams ("Jim"), Ashley Williams ("Ashley"), and Force Partners, LLC ("Force"), alleges as follows:

### Introduction

1. In this declaratory judgment action, Acuity seeks a declaration that it owes no duty to defend or indemnify KSA, Jim, or Ashley with respect to a certain action brought by Force in the United States District Court for the Northern District of Illinois, Eastern Division, case no. 1:19-cv-07776, styled as *Force Partners, LLC v. KSA Lighting & Controls, Inc. et al.* ("the underlying lawsuit").

### The Parties

2. Acuity is a mutual insurance company organized under the laws of Wisconsin, with its principal place of business in Sheboygan, Wisconsin. Acuity is a citizen of Wisconsin.

3. KSA is a corporation organized under the laws of Illinois, with its principal place of business in Itasca, DuPage County, Illinois. KSA is a citizen of Illinois.

4. Jim is a principal of KSA residing in the Northern District of Illinois. Jim is a citizen of Illinois.

5. Ashley is a principal of KSA residing in the Northern District of Illinois. Ashley is a citizen of Illinois.

6. Force is a limited liability company organized under the laws of Illinois with offices in Chicago and Westmont. Force is a citizen of Illinois. All of its members are citizens of Illinois and none of its members are publicly traded companies. Force is named herein only because it may be deemed a required party in that it may have an interest in the subject matter of this action. Acuity seeks no relief from Force, other than to the extent, if any, that it is interested in the subject matter of this action, that it be bound by the judgment sought herein. If an authorized representative of Force will sign a stipulation to that effect, then Acuity will voluntarily dismiss it as a defendant.

## Jurisdiction and Venue

7. No defendant is a citizen of the plaintiff's state of citizenship, Wisconsin, so diversity of citizenship exists.

8. The amount in controversy exceeds $75,000 exclusive of interest and costs. Although this complaint seeks no monetary damages—rather, it seeks only declaratory relief—the effect of granting that relief would be to void coverage for a loss exceeding $75,000 in value, exclusive of interest and costs, and for defense costs.

9. This Court therefore has original jurisdiction of this matter pursuant to 28 U.S.C. §1332(a).

10. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this claim occurred within the Northern District of Illinois, Eastern Division, and the defendants have their principal places of business, and/or reside in, the Northern District of Illinois.

11. An actual controversy exists between the parties, and pursuant to 28 U.S.C. §2201, this Court has the authority to grant the relief requested.

## The Underlying Lawsuit

12. On November 25, 2019, Force filed a seven-count complaint against KSA, Jim Williams ("Jim"), Ashley Williams ("Ashley"), and another entity in the United States District Court for the Northern District of Illinois, case no. 19-cv-7776.

13. On May 15, 2020, Force filed a First Amended Complaint (the "underlying complaint"). A copy of the underlying complaint is attached hereto as **Exhibit A**.

14. The underlying complaint alleges that Force and KSA are competing sales representatives for lighting and control products. Ex. A, ¶¶ 1, 26.

15. The underlying complaint alleges that Force and KSA each act as exclusive sale representatives for certain lighting and control manufacturers in the "greater Chicagoland market," which is comprised of 16 Illinois counties and 3 counties located in northern Indiana. Ex. A, ¶¶ 29, 30.

16. The underlying complaint alleges that Jim is KSA's president, and Ashley is KSA's Vice President of Distributor Solutions. Ex. A, ¶¶ 18, 19.

17. The underlying complaint alleges that manufacturers use sales representatives to sell to and through distributors. Ex. A, ¶¶ 35, 47.

18. The underlying complaint alleges sales representatives can provide budget quotes directly to a contractor, but the quote will include an extra margin for the distributor. Ex. A, ¶ 36.

19. The underlying complaint alleges that in the relevant market, over 75% of trade is handled by 23 distributors, which in turn comprise approximately 90% of the customers for both KSA and Force. Ex. A, ¶ 37.

20. The underlying complaint alleges that Force was established in 2017 and in the following two years, quickly became KSA's most significant competitor. Ex. A, ¶ 54.

21. The underlying complaint alleges that in August 2019, Jim and Ashley "made a coordinated and near simultaneous approach to most of the 23 most important lighting distributors in the greater Chicagoland market using a PowerPoint presentation in person to each Distributor with the aim of getting them to stop doing business with [Force] through a combination of monetary inducements and threats to withhold critical products and services." Ex. A, ¶ 73.

22. The underlying complaint alleges the PowerPoint presentation reportedly identified companies that KSA thought the distributors should boycott and explicitly named Force as one of those companies. Ex. A, ¶ 77.

23. The underlying complaint alleges that "KSA claimed that Force Partners was bypassing distributors to make sales directly to end-users and contractors, thereby denying sales and profits to distributors, and that KSA's claim is "false and one that KSA knew or should have known was false" Ex. A, ¶ 77.

24. The underlying complaint alleges that KSA was "disparaging the quality of the goods, services, or business of Force Partners by making false or misleading

representations of fact, alleging that Force Partners was bypassing distributors to make direct sales to end-users." Ex. A, ¶ 176.

25. The underlying complaint alleges that "KSA rolled out [a] boycott scheme" to the distributors wherein if a distributor wanted to continue to receive KSA's "best prices" on the products and services, it would have to agree to be a KSA "Partner." Ex. A, ¶ 82.

26. The underlying complaint alleges that to be a KSA Partner, distributors were told that they would have to curtail working with Force, rig bids to ensure KSA won projects, and eliminate Force products from their shelves by October 1, 2019 and that any distributor who did not agree to be a "Partner" would not receive KSA's "best prices," meaning that they would not be able to get KSA brands at a viable price. Ex. A, ¶ 9.

27. The underlying complaint alleges that certain distributors "were told they could not carry any of Force Partners' brands on their shelves" and that other distributors "were told they had to rig bids to ensure that KSA won any multiple-name specification bids that also included Force Partners." Ex. A, ¶¶ 83, 84.

28. The underlying complaint alleges that where KSA and Force brands were specified for bidding on a project, the distributors "were given the choice of (a) not quoting Force Partners brands at all or (b) providing Force Partners' confidential pricing information to KSA so it could "match" the price – with the obvious end goal of taking business away from Force Partners and putting them out of business." Ex. A, ¶ 84.

29. The underlying complaint alleges that if Force's brands were the only ones specified on a bid were the distributors permitted by KSA to quote Force's prices. Ex. A, ¶ 86.

5

30. The underlying complaint alleges that Ashley allegedly said to at least one distributor that the distributor "could no longer quote Force Partners on projects, unless it was 'mutually agreed to with KSA.'" Ex. A, ¶ 87.

31. The underlying complaint alleges that because KSA represents as much as 40-70% of the distributors' lighting and control business, the distributors could not afford to refuse KSA's demands. Ex. A, ¶ 10.

32. The underlying complaint alleges that Force was alarmed about the "scheme" and wrote to KSA on August 21, 2019, warning that its conduct was anticompetitive and violated antitrust laws. Ex. A, ¶ 103.

33. The underlying complaint alleges that starting in September 2019, "after months of upward sales momentum, Force began to see its sales drop significantly, showing that the scheme not only was implemented, it had started to produce its intended effects" and that "[t]o date, Force Partners has suffered over $2 million in lost sales." Ex. A, ¶ 12.

34. Counts I and II allege that KSA's boycott scheme and its conspiracy with the distributors is an unreasonable restraint in trade in violation of Section 1 of the Sherman Act. Count I was dismissed with prejudice on February 25, 2022.

35. Count III alleges that KSA's attempt to monopolize the lighting and control business through the boycott scheme violates Section 2 of the Sherman Act.

36. Count IV alleges that KSA's exclusive dealing agreements with the participating distributors violates Section 3 of the Clayton Act.

37. Count V alleges that KSA's boycott scheme violates the Illinois Antitrust Act (740 ILCS §10/2) premised on Section 10/3(1)-(4). Count V was dismissed in part with prejudice on February 25, 2022.

38. Count VI alleges that KSA's boycott scheme violates the Illinois Uniform Deceptive Trade Practices Act (15 ILCS §5/10-2). Count VI was dismissed with prejudice on February 25, 2022.

39. Count VII alleges that KSA's boycott scheme violates Illinois common law tortious interference with prospective business relations.

40. On February 25, 2022, pursuant to KSA's motion to dismiss, the court dismissed with prejudice Count II, Count V, with respect to the alleged violation premised on Section 10/3(1), and Count IV. A copy of the Court's February 25, 2022 Order is attached hereto as **Exhibit B**.

### NOTICE TO ACUITY

41. Acuity was first put on notice of the suit on July 20, 2022.

### THE ACUITY POLICY

42. Acuity issued a commercial package policy including commercial general liability ("CGL") coverage to KSA Lighting and Controls, Inc. as the named insured, policy number X38108, for the policy period of March 28, 2015 to March 28, 2016 and renewed for the policy period of March 28, 2016 to March 28, 2017 (collectively, the "Acuity Policy"). A true and correct copy of the Acuity Policy for the policy period of March 28, 2015 to March 28, 2016 is attached hereto as **Exhibit C.** A true and correct copy of the Acuity Policy for the policy period of March 28, 2016 to March 28, 2017 is attached here**to** as **Exhibit D.**

7

43. The Acuity Policy is intended to be interpreted as a whole, but for the convenience of the Court and counsel, Acuity sets forth certain pertinent provisions from the policy's CGL coverage, which are materially identical in each policy period, as follows:

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *personal and advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *personal and advertising injury* to which this insurance does not apply. We may, at our discretion investigate any offense and settle any claim or *suit* that may result.\*\*\*

   b. This insurance applies to *personal and advertising injury* caused by an offense arising out of your business, but only if the offense was committed in the *coverage territory* during the policy period.

   \* \* \* \* \*

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      *Personal and advertising injury* caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict *personal and advertising injury*.

   b. **Material Published With Knowledge of Falsity**

      *Personal and advertising injury* arising out of oral or written publication material, if done by or at the direction of the insured with knowledge of its falsity.

   \* \* \* \* \*

8

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

\* \* \* \* \*

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \* \* \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. \*\*\*

    **b.** If a claim is made or *suit* is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or *suit* and the date received; and

        **(2)** Notify us as soon as practicable. You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit*;

\* \* \* \* \*

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur

9

any expense, other than for first aid, without our consent.

\* \* \* \* \*

## SECTION V – DEFINITIONS

1. "*Advertisement*" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purposes of attracting customers or supporters. \*\*\*

\* \* \* \* \*

6. "*Executive officer*" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

\* \* \* \* \*

14. "*Personal and advertising injury*" means injury, including consequential *bodily injury*, arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;
    b. Malicious prosecution;
    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
    f. The use of another's advertising idea in your *advertisement*; or
    g. Infringing upon another's copyright, trade dress or slogan in your *advertisement*.

\* \* \* \* \*

44. There may be other relevant policy provisions on the basis of which Acuity can assert that it does not owe a duty to defend or indemnify KSA, Jim, and Ashley with respect to the underlying lawsuit, and Acuity reserves the right to plead them in the future.

**COUNT I**
**No Duty to Defend or Indemnify KSA in The Underlying Lawsuit**

45. Acuity restates and incorporates the allegations of paragraphs 1 through 44, above as if set forth fully herein.

46. Acuity has no duty to defend or indemnify KSA for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. KSA failed to provide notice of the underlying claim and suit, or of the acts, errors or omissions which gave rise to that claim and suit to Acuity as soon as practicable, in violation of the Acuity policy's notice conditions at Section IV.2.a., b., which are prerequisites to coverage.

   b. KSA failed to timely send to Acuity copies of demands, notices, summonses and legal papers received in connection with the underlying claim and suit, in violation of the Acuity policy's notice conditions at Section IV.2.c.(1), which is a prerequisite to coverage.

   c. The underlying lawsuit does not allege a "personal and advertising injury."

   d. The underlying lawsuit does not allege a "personal and advertising injury" occurring during the Acuity policy periods.

   e. The Acuity policy's exclusion for knowing violations of the rights of another, exclusion 2.a. negates any "personal and advertising injury" coverage that might otherwise exist.

   f. There may be other bases on which Acuity can properly deny coverage to KSA, and Acuity reserves the right to plead them in the future.

47. For one or more of the foregoing reasons, Acuity has no duty to defend or indemnify KSA with respect to the underlying lawsuit.

48. There may be other bases on which Acuity can properly deny coverage to KSA, and Acuity reserves the right to plead them in the future.

**WHEREFORE**, the Plaintiff, Acuity, a mutual insurance company, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify the Defendant KSA Lighting & Controls, Inc., with respect to the underlying lawsuit, and for such other and further relief as this Court deems appropriate and just under the circumstances.

**COUNT II**
**No Duty to Defend or Indemnify Jim Williams in The Underlying Lawsuit**

49. Acuity restates and incorporates the allegations of paragraphs 1 through 48, above as if set forth fully herein.

50. Acuity has no duty to defend or indemnify Jim for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. Jim does not qualify as an insured because Jim's alleged wrongful conduct was not part of his duties as a KSA officer or director.

   b. Jim failed to provide notice of the underlying claim and suit to Acuity as soon as practicable, in violation of the Acuity policy's notice conditions at Section IV.2.b., which are prerequisites to coverage.

   c. Jim failed to timely send to Acuity copies of demands, notices, summonses and legal papers received in connection with the underlying claim and suit, in violation of the Acuity policies' notice conditions at Section IV.2.c.(1), which is a prerequisite to coverage.

   d. The underlying lawsuit does not allege a "personal and advertising injury."

   e. The underlying lawsuit does not allege a "personal and advertising injury" occurring during the Acuity policy periods.

   f. The Acuity policy's exclusion for knowing violations of the rights of another, exclusion 2.a. negates any "personal and advertising injury" coverage that might otherwise exist.

51. For one or more of the foregoing reasons, Acuity has no duty to defend or indemnify Jim with respect to the underlying lawsuit.

52. There may be other bases on which Acuity can properly deny coverage to Jim, and Acuity reserves the right to plead them in the future.

**WHEREFORE**, the Plaintiff, Acuity, a mutual insurance company, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify the Defendant Jim Williams, with respect to the underlying lawsuit, and for such other and further relief as this Court deems appropriate and just under the circumstances.

## COUNT III
### No Duty to Defend or Indemnify Ashley Williams in the Underlying Lawsuit

53. Acuity restates and incorporates the allegations of paragraphs 1 through 48, above as if set forth fully herein.

54. Acuity has no duty to defend or indemnify Ashley for one or more of the following reasons, pleading hypothetically or in the alternative:

   a. Ashley does not qualify as an insured because Ashley's alleged wrongful conduct was not part of her duties as a KSA officer or director.

   b. Ashley failed to provide notice of the underlying claim and suit to Acuity as soon as practicable, in violation of the Acuity policy's notice conditions at Section IV.2.b., which are prerequisites to coverage.

   c. Ashley failed to timely send to Acuity copies of demands, notices, summonses and legal papers received in connection with the underlying claim and suit, in violation of the Acuity policies' notice conditions at Section IV.2.c.(1), which is a prerequisite to coverage.

   d. The underlying lawsuit does not allege a "personal and advertising injury."

   e. The underlying lawsuit does not allege a "personal and advertising injury" occurring during the Acuity policy periods.

   f. The Acuity policy's exclusion for knowing violations of the rights of another, exclusion 2.a. negates any "personal and advertising injury" coverage that might otherwise exist.

55. For one or more of the foregoing reasons, Acuity has no duty to defend or indemnify Ashley with respect to the underlying lawsuit.

56. There may be other bases on which Acuity can properly deny coverage to Ashley, and Acuity reserves the right to plead them in the future.

**WHEREFORE**, the Plaintiff, Acuity, a mutual insurance company, prays that this Honorable Court enter an Order finding and declaring that it does not owe a duty to defend or indemnify the Defendant Ashley Williams, with respect to the underlying lawsuit, and for such other and further relief as this Court deems appropriate and just under the circumstances.

Respectfully submitted,
LINDSAY, PICKETT & POSTEL, LLC


By:    Joseph P. Postel
      Attorney for Plaintiff
      ACUITY, a mutual insurance company

Joseph P. Postel
ARDC # 6189515
jpostel@lpplawfirm.com
312-800-6008
Philip G. Brandt
ARDC # 6295960
pbrandt@lpplawfirm.com
312-762-5154
Lindsay, Pickett & Postel, LLC
200 W. Madison St., Suite 3850
Chicago, Illinois 60606